**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DAYS INN WORLDWIDE, INC.,** | Civ. No. 21-10335 (KM)(LDW) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **JAI SHREE JALARAM, INC., et al,** | |
| **Defendants.** | |

<u>**KEVIN MCNULTY, U.S.D.J.:**</u>

Days Inns Worldwide, Inc. ("DIW") initiated this diversity action against Jai Shree Jalaram, Inc. ("Jai Shree Jalaram" or "JSJI"), as well as Haresh Patel, Devenkumar Patel, and Kishankumar Patel (the "Individual Defendants"), for breach of contract and unjust enrichment. Because Defendants have failed to answer or otherwise respond to the Complaint, the clerk entered default, and DIW now moves for a default judgment. (DE 9.) For the reasons provided herein, I will **GRANT** DIW's motion.

I.    **Summary**[1]

a. **Factual Allegations**

DIW is a Delaware corporation with its principal place of business in Parsippany, New Jersey. (Compl. ¶1.) JSJI is a Missouri LLC with its principal place of business in Glendale, California. (Compl. ¶2.) Haresh Patel is a citizen

---

[1]    Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated.

"DE" = Docket entry number in this case.

"Compl." = Plaintiff's Complaint (DE 1)

"Kendra Aff." = Affidavit of Kendra Mallet (DE 11-4)

1

of California. (Compl. ¶3.)  Devenkumar Patel and Kishankumar Patel are citizens of Missouri. (Compl. ¶¶ 4-5.)

More than $75,000 is in controversy. (Compl. ¶6.) JSJI has consented to personal jurisdiction by virtue of section 17.6.3 of the September 30, 2009 franchise agreement, as assigned and assumed on December 5, 2017, between JSJI and DIW (the "Franchise Agreement"). (Compl. ¶7.) The Individual Defendants have consented to personal jurisdiction via a guaranty (the "Guaranty") that binds them to section 17 of the Franchise Agreement. (Compl. ¶28.)

On September 30, 2009, DIW entered into the Franchise Agreement with New Florence Hospitality L.L.C. ("New Florence Hospitality") for the operation of a Days Inn guest-lodging facility in New Florence, Missouri (the "Facility"). (Compl. ¶10, Ex. A.) On December 5, 2014, New Florence Hospitality, JSJI, and DIW entered into an assignment and assumption agreement (the "Assignment and Assumption Agreement"), by which JSJI assumed all of New Florence Hospitality's rights, benefits, and obligations. (Compl. ¶11, Ex. B.)

On December 29, 2015, DIW and JSJI entered into a SynXis Subscription Agreement (the "SynXis Agreement") regarding JSJI's "access to and use of certain computer programs, applications, features and services, as well as any and all modifications, corrections, updates, and enhancements to same." (Compl. ¶12.) Pursuant to the Franchise Agreement and the SynXis Agreement, JSJI "was required to make certain periodic payments to DIW for royalties, system assessments, taxes, interest, SynXis fees and other fees" (collectively "Recurring Fees"). (Compl. ¶15.)

Pursuant to section 5 of the Franchise Agreement, JSJI was obligated to operate a Days Inn guest-lodging facility for a fifteen-year term. (Compl. ¶14.)

Section 7.3 of the Franchise Agreement set the interest on "any past due amount" payable to DIW under the Franchise Agreement "at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (Compl. ¶15.) Section 3.6 of the Franchise Agreement required JSJI to record all transactions it

2

conducted and gross revenue it earned "for purposes of establishing the amount of royalties and other Recurring Fees due to DIW." (Compl. ¶16.) Additionally, the Franchise Agreement required JSJI to maintain "accurate financial information, including books, records, and accounts, relating to the gross revenue of the Facility." (Compl. ¶17.) JSJI also agreed "to allow DIW to examine and audit the entries in these books, records, and accounts." (Compl. ¶17.)

Section 11.2 of the Franchise Agreement states that DIW could terminate the Franchise Agreement, with notice, if JSJI: (a) discontinued operating the Facility as a Days Inn guest-lodging establishment, and/or (b) lost possession or the right to possession of the Facility. (Compl. ¶18.) Further, under section 12.1 of the Franchise Agreement, "in the event of a termination of the Franchise Agreement pursuant to section 11.2," JSJI would pay liquidated damages to DIW in accordance with a formula specified in the Franchise Agreement." (Compl. ¶19.) Section 18.4 sets liquidated damages at $1,000 for each guest room that JSJI was authorized to operate in the Facility at the time of termination. (Compl. ¶20.) Upon suit for breach, the Franchise Agreement provided that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party." (Compl. ¶21.)

The Individual Defendants provided DIW with the Guaranty of JSJI's obligations under the Franchise Agreement. (Compl. ¶22, Ex. D.) Under the Guaranty, the Individual Defendants agreed that, upon JSJI's default under the Franchise Agreement, they would "immediately make each payment and perform or cause [JSJI] to perform, each obligation required of [JSJI] under the [Franchise] Agreement." (Compl. ¶23.) Likewise, the Individual Defendants agreed to "pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the Franchise Agreement." (Compl. ¶24.)

On May 25, 2020, JSJI informed DIW that it intended to stop operating the Facility as a Days Inn guest-operating establishment on July 1, 2020, thus

terminating the Franchise Agreement. (Compl. ¶25.) On July 12, 2020, DIW acknowledged JSJI's unilateral termination of the Franchise Agreement, effective July 1, 2020, and advised JSJI of its obligation under the Franchise Agreement to pay DIW $46,000 in liquidated damages for premature termination, as well a "all outstanding Recurring Fees through the date of termination." (Compl. ¶26.)

### b. Procedural History

On April 28, 2021, DIW filed this action. Count 1 seeks an accounting of revenues. Count 2 seeks liquidated damages under sections 12.1 and 8.4 of the Franchise Agreement in the amount of $46,000. Count 3 seeks actual damages in the alternative to liquidated damages. Count 4 seeks $60,441.55 in Recurring Fees obligated under the Franchise Agreement and the SynXis Agreement, under a theory of breach of contract. Count 5 seeks $60,441.55 in Recurring Fees under the Franchise Agreement, under a theory of unjust enrichment. Count 6 seeks payment from the Individual Defendants as guarantors for the obligations of JSJI.

Defendant has failed to answer or otherwise respond to the Complaint. On July 27, 2021, the Clerk entered default. DIW now moves for default judgment and seeks damages in the amount of $122,206.20. (Mallet Aff. ¶¶28.)

## II.   Discussion

### a. Legal Standard

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1

(D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

### b. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Here, the docket contains proof of service of the Summons and Complaint on Devenkumar Patel and Kishankumar Patel on May 22, 2021 (DE 6), Haresh Patel on May 29, 2021 (DE 6), and JSJI on June 11, 2021. (DE 7.) Defendants have failed to answer or otherwise respond to the Complaint within the deadline and the Clerk's entry of default was duly noted on the docket on July 21, 2021. Therefore, the prerequisites for default have been satisfied.

### c. Three-Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg.*

*Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

### i. Factor one: Existence of a meritorious defense

As always, evaluation of the first factor is made difficult by the Defendants' failure to answer or to oppose the motion for default judgment. It is also made difficult, however, by DIW's failure to brief its entitlement to the relief sought. (*See* DE 11 at 3 (noting that DIW declined to submit a brief under Local Civil Rule 7.1(d)(1) "because no significant legal argument is made in connection with this motion.").) Nevertheless, my independent review of the record does not suggest that DIW's claims are legally flawed.

This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332 because DIW and Defendants are citizens of different states and the amount in controversy exceeds $75,000. Defendants have also consented to the personal jurisdiction of this Court under the Guaranty. (Compl. ¶8); *see also Actega Kelstar, Inc. v. Musselwhite*, No. 09-1255, 2009 WL 1794793, at *2 (D.N.J. June 22, 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14, 105) (noting that a forum selection clause is one way to consent to personal jurisdiction).

The Complaint asserts causes of action for both breach of contract and unjust enrichment. (Compl. ¶¶26-37.) On its motion for default judgment, DIW seeks damages it incurred because of JSJI's breach of its obligations under the Franchise Agreement and Guaranty to remit Recurring Fees owed. (Mallet Aff. ¶19.) I will therefore focus on the breach of contract claim.

I am satisfied that the plaintiffs have set forth a legally sufficient claim of breach of contract. To establish a breach of contract under New Jersey law, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir.2007) (internal citation omitted).

Here, the Complaint alleges specific facts showing that DIW and JSJI entered into three valid, enforceable contracts: the Franchise Agreement, the SynXis Agreement, and the Assignment and Assumption Agreement. (Compl. ¶¶10-24.) The Complaint alleges that JSJI breached its contractual obligations by failing to remit the Recurring Fees upon termination of the Franchise Agreement in accordance with those agreements. (Compl. ¶¶41-44.) DIW does not explicitly plead that it has fully performed its own contractual obligations. (*See generally id.*) However, I have no facts before me to the contrary, and the Complaint alleges that JSJI unilaterally terminated the Franchise Agreement (Compl. ¶25) and that DIW acknowledged JSJI's unilateral termination on July 12, 2020. (Compl. ¶26.)

Moreover, pursuant to the Assignment and Assumption Agreement entered into between New Florence Hospitality, DIW, and JSJI, the Individual Defendants provided DIW with a Guaranty of JSJI's obligations under the Franchise Agreement. (Compl. ¶22.) Under that Guaranty, the Individual Defendants agreed, in part, that in the event of default under the Franchise Agreement, the Individual Defendants would: (1) "immediately make each payment and perform or cause [JSJI] to perform, each obligation required of [JSJI] under the [Franchise] Agreement"; and (2) "pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the Franchise Agreement." (Compl. ¶¶23-24.)

DIW also alleges that it is entitled to receive Recurring Fees in the amount of $64,389.92 inclusive of interest (calculated at the legal rate of 1.5% per month pursuant to the Franchise Agreement) (*See* Compl. ¶¶ 34, 44, 52; Mallet Aff. ¶19), as well as $57,816.28 in liquidated damages inclusive of interest (calculated at the legal rate of interest of 1.5%). (Mallet Aff. ¶¶26-27.) That theory of damages is straightforward and uncontroversial.

Finally, DIW has properly alleged that the Guaranty Agreement, which makes the Individual Defendants personally liable for JSJI's defaults, has been breached because the damages and fees have not been paid. (Compl. ¶¶50-52.) In light of the above, I find the first factor supports default.

### ii. Factors two and three: Prejudice to DIW and JSJI's culpability

The second and third factors also weigh in favor of default. Defendants were properly served but failed to appear, defend, or otherwise respond to the Complaint. DIW has clearly been prejudiced by this dereliction because it has been "prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiff will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in default." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that the Defendant's failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment.

### d. Remedies

DIW seeks two types of compensation, totaling $122,206.20. These consist of (1) $64,389.92 in Recurring Fees, including the principal and pre-judgment interest, and (2) $57,816.28 in liquidated damages, including the principal and pre-judgment interest. The calculations and supporting documentation are set forth in the Affidavit of Kendra Mallet. (Mallet Aff. ¶¶19, 25-27, Ex. F, G.)

I will grant DIW's request for the principal amount of Recurring Fees due

and interest on those fees. (Mallet Aff. ¶ 19.) DIW documented Recurring Fees (and the interest thereon calculated at 1.5% monthly) owed from April 2019 through July 1, 2020 in the amount of $64,389.92. (Mallet Aff. ¶19 n.1, Ex. F.)

I will also grant DIW's request for liquidated damages. (Mallet Aff. ¶¶ 25-27.) DIW calculated $46,000.00 in liquidated damages from section 18.4 of the Franchise Agreement, which set liquidated damages at $1,000 multiplied by the 46 guest rooms. (Mallet Aff. ¶25.) DIW then properly calculated 1.5% interest over 521 days from July 31, 2020 (30 days from the termination notice) to January 3, 2022 (the return date of this motion) to reach $11,861.28 in interest owed on the liquidated damages payment. (*Id.* ¶ 27) Thus, the total amount I will award for liquidated damages is $57,816.28.

The Defendants have submitted nothing and have failed to appear or respond in any matter. Thus, I am obliged to grant DIW's request for the principal amount of Recurring Fees and liquidated damages, plus interest as calculated by the Mallet Affidavit.

### III.    Conclusion

For the reasons set forth above, I will grant DIW's motion (DE 11) for default judgment.

An appropriate order follows.

Dated: February 1, 2022

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**